FILED IN CLERK'S OFFICE
U.S.D.C. -Gainesville

DEC 17 2009

JAMES N. HATTEN, Clerk
By: Don Stanhope
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION |
| | : | NO. 2:08-CR-042-WCO |
| CHARLES VAN BRACKLE, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION AND ORDER

Before the court are two requests for restitution against defendant Charles Van Brackle. Defendant pleaded guilty to one count of receiving child pornography in violation of 18 U.S.C. § 2252(a)(2)(A). Vicky and Amy[1] (collectively "claimants") were the children whose sexual abuse was depicted in certain images found in defendant's possession. Now adults, they seek restitution against defendant pursuant to 18 U.S.C. § 2259.

On September 21, 2009, the court sentenced defendant to 110 months in prison followed by supervised release for life. The court severed the restitution issue and ordered the parties to submit briefs detailing their respective positions. (J. & Commitment Charles R. Van Brackle 6 [51-1]). If restitution is proper, the claimants' losses must be determined and restitution imposed within ninety days of sentencing. 18 U.S.C. § 3664(d)(5), *United States v.*

---

[1] "Amy" is a pseudonym adopted by claimant's counsel to protect her privacy.

*Maung*, 267 F.3d 1113, 1121 (11th Cir. 2001) ("What a court generally may not do . . . is impose a sentence and then delay determination of the amount of losses more than 90 days from sentencing."). The ninety-day restitution period in the case at bar will expire on December 20, 2009. On December 14, 2009, the court held a hearing on the requests for restitution, at which both the government and the defendant presented their arguments.[2] Both parties have thoroughly briefed the relevant issues and have submitted extensive supporting documentation, which the court has carefully considered.

The Eleventh Circuit has not yet ruled on a request for restitution in this context. To the best of the court's knowledge, the issue is one of first impression in this district. The court recognizes the importance of a clear and succinct explanation of its holdings in this case, as guiding precedent is scarce and the court anticipates that similar restitution requests will continue to arise in the future.[3]

---

[2] At the December 14, 2009 hearing the court denied defendant's "Motion to Conduct Independent Mental Health Evaluation" [65-1], in which defendant sought to conduct independent psychiatric evaluations of claimants.

[3] Counsel for the parties represent that Amy alone has filed approximately 250 similar restitution requests to date.

I.  Discussion

18 U.S.C. § 2259(a) and § 2259(b)(1) provide that a court "shall" order a defendant to pay restitution for the "full amount of the victim's losses" for any offense in violation of 18 U.S.C. §§ 2251 *et seq*. The statute lists the types of losses for which restitution may be ordered:

> For purposes of this subsection, the term "full amount of the victim's losses" includes any costs incurred by the victim for--
> (A) medical services relating to physical, psychiatric, or psychological care;
> (B) physical and occupational therapy or rehabilitation;
> (C) necessary transportation, temporary housing, and child care expenses;
> (D) lost income;
> (E) attorneys' fees, as well as other costs incurred; and
> (F) any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(3). Where the statutory requirements are met, restitution is clearly mandatory, and the court may not decline to order restitution because of the defendant's economic circumstances or because the victim may receive compensation from other sources. 18 U.S.C. § 2259(b)(4). Restitution orders under § 2259 are to be issued and enforced in accordance with 18 U.S.C. § 3664 and 18 U.S.C. § 3663A. 18 U.S.C. § 2259(b)(2). The government bears the burden of proving the amount of the victims' losses by a preponderance of the evidence, and the court must resolve any disputes as to

3

AO 72A
(Rev.8/82)

the proper amount or type of restitution according to the same standard. 18 U.S.C. § 3664(e).

### A. Claimants are Victims Under § 2259

18 U.S.C. § 2259 mandates restitution for losses incurred by *"victims"* of violations under 18 U.S.C. § 2251 *et seq.* (emphasis added.) Section 2259(c) defines a "victim" as "the individual harmed as a result of a commission" of such a violation. Defendant's offense, receipt of child pornography, is a violation of 18 U.S.C. § 2252A(a)(2)(A). Claimants are thus "victims" if they were harmed by the receipt of child pornography containing their images. The Supreme Court has recognized that:

> [t]he distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children in at least two ways. First, the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation. Second, the distribution network for child pornography must be closed if the production of material which requires the sexual exploitation of children is to be effectively controlled.
>
> . . . .
>
> Pornography poses an even greater threat to the child victim than does sexual abuse or prostitution . . . . A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.

*New York v. Ferber*, 458 U.S. 747, 759 (1982) (internal quotations and citations omitted). Although *Ferber* dealt with sales and advertising, and not receipt, of child pornography, the "circulation" and "distribution system" that the Court contemplated must surely include an end consumer who receives the child pornography; "circulation" and "distribution" do not occur in a vacuum. The Fifth Circuit has also recognized that the end consumer of child pornography directly harms the child portrayed. In *United States v. Norris*, the Fifth Circuit rejected the argument that receipt of child pornography does not victimize the particular child depicted:

> The consumer, or end recipient, of pornographic materials may be considered to be causing the children depicted in those materials to suffer as a result of his actions in at least three ways. *First*, the simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials . . . . The consumer who "merely" or "passively" receives or possesses child pornography directly contributes to this continuing victimization . . . . *Second*, the mere existence of child pornography represents an invasion of the privacy of the child depicted . . . . *Third*, the consumer of child pornography instigates the original production of child pornography by providing an economic motive for creating and distributing the materials. . . . *[T]he victimization of a child depicted in pornographic materials flows just as directly from the crime of knowingly receiving child pornography as it does from the arguably more culpable offenses of producing or distributing child pornography.*

*United States v. Norris*, 159 F.3d 926, 929-31 (5th Cir. 1998) (emphasis added to final sentence).

Following *New York v. Ferber*, and persuaded by *United States v. Norris*, the court recognizes that children portrayed in child pornography are harmed "as a result of" the receipt and possession of such pornography. Accordingly, the court holds that claimants are "victims" of defendant's receipt of child pornography within the meaning of § 2259(c).

**B.     Causation**

*1. Proximate Causation Requirement Under § 2259*

The government argues that § 2259 does not require it to establish by a preponderance of the evidence that a specific loss was proximately caused by defendant's specific offense. Instead, the government argues that the court should presume causation once the claimant's identity as a victim under § 2259(c) is established. The government points out that § 2259(c) defines a "victim" only as one harmed "as a result of" defendant's violation, and does not use the words "proximate cause." It notes that the words "proximate result" appear only after the final subsection of § 2259(b)(3). Section 2259(b)(3) lists the losses for which a victim may be compensated, and then finally provides that victims may be compensated for "any other losses suffered by the victim *as a proximate result of the offense.*" § 2259(b)(3)(F) (emphasis added). Because only Subsection F contains the words "proximate

6

result," the government argues that those words apply only to "any other losses" and not to the previously enumerated categories. The government also points out that although the phrase "directly and proximately harmed" appears in 18 U.S.C. § 3663A, it is absent from § 2259, and argues that this difference indicates that Congress intended the courts to analyze causation differently under the two statutes.

The court cannot accept the government's arguments regarding proximate causation under § 2259. The Eleventh Circuit has clearly held that "Section 2259 . . . requires a causal connection between the offense of conviction and the victim's harm." *United States v. Laney*, 189 F.3d 954, 965 (11th Cir. 1999). Furthermore, § 2259 incorporates by reference the requirements of § 3664. The Supreme Court has held that courts awarding restitution under § 3664 should limit the amount awarded to the "loss caused by the specific conduct that is the basis of conviction." *Hughey v. United States*, 495 U.S. 411, 413 (1990).[4] A restitution order encompassing losses

---

[4] The applicability of the holding in *Hughey* was somewhat limited by the 1990 amendment of 18 U.S.C. § 3663(a)(2), which now permits a court to award broad restitution for acts involving "as an element a scheme, a conspiracy, or a pattern of criminal activity." Defendant's violation does not involve a scheme, conspiracy, or pattern of criminal activity; thus, any expansion of the scope of permissible restitution does not apply here.

AO 72A
(Rev.8/82)

stemming from acts other than that to which the defendant pleaded guilty would be invalid. *Id.* at 421.

The court also has grave concerns that adopting the government's approach to causation in the application of § 2259 would violate the Eighth Amendment's Excessive Fines Clause. The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. Case law offers little guidance concerning the application of the Eighth Amendment's prohibition against "excessive fines" to restitution orders. *See United States v. Berk*, No. 08-CR-212-P-S, 2009 U.S. Dist. LEXIS 103141, at *16 (D. Me. October 29, 2009). However, the Ninth Circuit has held the Eighth Amendment applicable to restitution orders. *United States v. Dubose*, 146 F.3d 1141, 1144 (9th Cir. 1998)(cited approvingly in *United States v. Seigel*, 153 F.3d 1256, 1259 (11th Cir. 1998)). In *DuBose*, the Ninth Circuit reasoned that a restitution order would not violate the Eighth Amendment where it was not grossly disproportionate to the defendant's culpability. *Id* at 1145. The general restitution statutes guard against disproportionality by requiring a causal connection between the "victim's loss *caused by the defendant's illegal*

8

*activity*" and the amount the defendant is required to pay.[5]  *Id.* (emphasis added) (internal quotations omitted).  Removal of the statutory requirement that a particular defendant's actions must have caused a particular loss would remove this safeguard and open the door to constitutional violations in the application of the statute.  "[A]n act of Congress ought not to be construed to violate the Constitution if any other possible construction remains available." *Rust v. Sullivan*, 500 U.S. 173, 191 (1991) (internal quotations omitted).

Finally, the court rejects the government's argument that the "proximate result" language of § 2259(b)(3)(F) applies only to that subsection.  "When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." *Porto Rico Ry., Light & Power Co. v. Mor*, 253 U.S. 345, 348 (1920).  Applying this canon of statutory construction, the court holds that the phrase "as a proximate result of the offense" applies to each enumerated category of loss in § 2259(b)(3).

For the foregoing reasons, the court concludes that § 2259 requires the government to show, by a preponderance of the evidence, that the defendant's

---

[5] The court in *DuBose* was discussing restitution solely under 18 U.S.C. § 3664 and § 3663, but its reasoning is equally applicable to proportionality concerns under 18 U.S.C. § 2259.

9

offense proximately caused a specific loss on the claimants' part. The court is not authorized to award restitution for losses that the government cannot establish as proximately caused by *this* offense and by *this* defendant. The court notes that most other courts to examine this issue have also concluded that § 2259 requires the government to show proximate causation between a victim's loss and a defendant's offense. *See United States v. Berk*, 2009 Dist. LEXIS 103141 at *12 (noting that "nearly every court to have [interpreted § 2259] has found that it requires the victim's loss to have been proximately caused by the offense of conviction" and surveying the case law prior to October 29, 2009); *see also United States v. Paroline*, No. 6:08-CR-61, 2009 U.S. Dist. LEXIS 113443, at *27 (E.D. Tex. Dec. 7, 2009).

2. *Proximate Causation in the Case at Bar*

Having concluded that the government must show by a preponderance of the evidence that defendant's offense proximately caused a specific harm to claimants, the court now considers whether the government has met that burden. Trial courts have broad discretion in ordering restitution, and future mental health costs are appropriately awarded. *United States v. Laney*, 189 F.3d at 966. However, the court must be able to estimate with reasonable certainty what amount of losses are attributable to the defendant and his

offense. *See id.* at 967. As discussed above, the court must estimate not only a total amount of harm, but must be able to ascertain with reasonable certainty from the evidence presented what proportion of the total harm was proximately caused by *this* defendant and *this* offense.

Both claimants have presented extensive expert testimony and evidence regarding their losses. Both women have submitted victim impact statements as well as expert reports. Vicky has submitted the report of Dr. Randall Green, Ph.D., a clinical psychologist who examined her. Dr. Green reports that "[Vicky] has suffered significant permanent psychological damages as a direct result of the knowledge that images of her victimization, humiliation and exploitation have been downloaded and viewed by numerous individuals." (Gov't's Position Regarding Restitution Attach. D-1 2 [48-4]). The psychological harms for which Dr. Green reports Vicky will need treatment include decline in academic performance, alcohol abuse, anger and resentment, anxiety, depression, extreme distrust of men (because she suspects that all men she meets have viewed images of her abuse), insomnia, and post-traumatic stress disorder. (*Id.* at 3-5). These harms will require long-term therapy on indefinite and ongoing basis. (*Id.* at 9). Vicky seeks a total of $448,758 in restitution for economic and non-economic losses.

11

Amy, in her victim impact statement, has told the court: "It is hard to describe what it feels like to know that at any moment, anywhere, someone is looking at pictures of me as a little girl being abused by my uncle and is getting some kind of sick enjoyment from it. It's like I'm being abused over and over again." As further evidence of Amy's losses, the government has submitted the testimony of Dr. Joyanna Silberg, Ph.D., a clinical psychologist who examined Amy. Dr. Silberg reports that Amy had begun to recover after initial treatment, but that her symptoms returned and were exacerbated by the knowledge that images of her abuse were being downloaded by others. (Gov't's Position Regarding Restitution Attach. C 3 [48-3]). Dr. Silberg describes the initial abuse and the continuing distribution of the pornographic images as having a "lasting and life changing impact" on Amy, including engendering and exacerbating post-traumatic stress disorder. (*Id.* at 8). The government has also submitted an actuarial analysis that estimates Amy's lost future earnings to be approximately $2,855,173. (*Id.* at 24). In total, Amy seeks $3,367,854 in restitution for future treatment costs and lost future earnings.

The government has presented ample evidence of tragic harms both past and future, and the court is profoundly aware of what the claimants have and

will continue to suffer as victims of child abuse and child pornography. However, the government has not presented any evidence whatsoever that would permit the court to estimate with reasonable certainty what portion of the claimants' harm was proximately caused by defendant's act of receiving child pornography, as opposed to the initial abuse or unknown other acts of receipt and distribution that occurred before and independent of defendant's act. Instead, the evidence tends to establish a total amount of harm resulting from all the abuses suffered, including the initial abuse and the initial distribution of the child pornography. The restitution request seeks to recover from defendant all losses resulting from all acts by all abusers, without regard to proximate causation. In the absence of evidence of proximate causation, a restitution award would be pure speculation and would risk violating the Eighth Amendment. The court is not authorized by statute or precedent to make such an award.

## II. Conclusion

For the foregoing reasons, the government's request for restitution on claimants' behalf is hereby **DENIED**. Since this case is already on appeal, the clerk is hereby **DIRECTED** to furnish a copy of this memorandum opinion and order to the United States Court of Appeals for the 11th Circuit.

**IT IS SO ORDERED**, this 17th day of December, 2009.

WILLIAM C. O'KELLEY
Senior United States District Judge

AO 72A
(Rev.8/82)